Donna T. Badners, as executrix of the estate of Thomas M. Badners, and Carole B. Tindal sued Prudential Life Insurance Company of America (hereinafter "Prudential"); John Grant, Prudential's local agent in Baldwin County; and First Alabama Bank of South Baldwin (hereinafter "First Alabama"), alleging fraud, bad faith failure to pay insurance proceeds, and breach of contract. First Alabama filed a cross-claim against Prudential, and Prudential filed a counterclaim against First Alabama. The defendants filed separate motions for summary judgment.
The trial court entered summary judgment for Prudential on all claims of Tindal and on the bad faith and breach of contract claims of Badners; Prudential's motion as to Badners's fraud claim was denied. The court also entered summary judgment for First Alabama on the fraud and bad faith claims of both plaintiffs; First Alabama's motion was denied on the breach of contract claims. The court entered summary judgment for Grant on the bad faith and breach of contract claims of both plaintiffs and on the fraud claim of Tindal; Grant's motion was denied as to Badners's fraud claim. The judgments entering summary judgment were made final pursuant to Rule 54(b), Ala.R.Civ.P. From the judgments in favor of the defendants, Badners and Tindal appeal.
On December 6, 1973, Thomas Badners and Prudential delivered to South Baldwin Bank[1] an authorization to honor checks drawn by and payable to Prudential on Mr. Badners's bank account number 21-076-50. On January 4, 1974, Mr. Badners purchased an insurance policy, number 39-189-721, from Prudential, naming his wife, Carole J. Badners, as beneficiary. The policy allowed a 31-day grace period for payment of a premium in default. The policy provided further that if the premium remained unpaid at the end of the grace period, the policy's term insurance rider would terminate.
On March 19, 1984, Thomas and Carole Badners were divorced. Pursuant to the divorce judgment, Mr. Badners was to maintain the life insurance policy with Carole Badners as beneficiary. Four days before the judgment was entered, Mr. Badners closed bank account number 21-076-50. Although First Alabama was not authorized to pay drafts on any other account of Mr. Badners, it continued to honor drafts payable to Prudential until June 1986, manually changing the account numbers on the drafts.
In June 1986, the bank refused to honor Prudential's draft against Mr. Badners's account number 21-076-50 for the monthly premium due on June 4, 1986. Prudential says that on June 17, it received notice that First Alabama was "unable to locate" Mr. Badners's account numbered 21-076-50. The 31-day grace period expired on July 3, 1986, whereupon the term insurance rider terminated.
Thomas Badners died testate on July 18, 1986. His second wife, Donna T. Badners, was named as executrix of his estate. After Mr. Badners's death, Prudential informed Donna Badners that the policy was in default because the June 1986 draft for the monthly premium had been returned unpaid by First Alabama and, therefore, the premium was unpaid.
John Grant subsequently went to Donna Badners's home and told her that Prudential had changed its method of billing and *Page 1244 
that the premium had not been paid. Although Grant did not specify the amount due under the policy, he assured her that Prudential would pay the full proceeds due under the policy.
On August 26, 1986, Tindal,[2] the named beneficiary under the policy, made a claim for the benefits due under the policy. On September 4, 1986, Prudential paid Tindal $8,092.75 for extended term insurance due under the policy. Prudential did not pay the amount of the term insurance rider because of nonpayment of the July 1986 premium.
This case was filed on July 15, 1988. Accordingly, the "substantial evidence rule" applies to the rulings on the motions for summary judgment. See Ala. Code 1975, § 12-21-12.
 I Fraud Claims
Based on the allegations in Badners and Tindal's complaint, it appears that the fraud claims were brought pursuant to Code § 6-5-101. That statute reads as follows:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
We have carefully reviewed the record and find that Tindal has not shown any misrepresentation of a material fact made to her by any defendant; nor has Badners shown any misrepresentation of a material fact made to her by First Alabama. See Webb v. Renfrow, 453 So.2d 724 (Ala. 1984).
The trial court correctly entered summary judgment for all defendants as to Tindal's fraud claim and for First Alabama as to Badners's fraud claim. The summary judgments on the fraud claims are, therefore, affirmed.
 II Bad Faith Claims
Likewise, the summary judgments as to the bad faith claims of Badners and Tindal are due to be affirmed. In Grimes v. LibertyNational Life Ins. Co., 551 So.2d 329 (Ala. 1989), this Court, citing National Security Casualty Co. v. Bowen, 417 So.2d 179
(Ala. 1982), stated:
 " 'To succeed in a bad faith refusal case, the plaintiff has the burden of proving: (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal; (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.' "
551 So.2d at 332.
Based on Grimes, we find that Badners and Tindal's bad faith claims against the defendants are without merit. The record shows no insurance contract between the plaintiffs and First Alabama or Grant. Furthermore, the record shows that Prudential did not pay the amount of the term insurance rider because the premium had not been paid; therefore, Prudential had a reasonably legitimate or arguable reason for its failure to pay the amount of the rider. The trial court, therefore, correctly entered summary judgment for the defendants on the bad faith claims.
 III Breach of Contract Claims
Badners and Tindal concede that the summary judgments entered for Grant on the breach of contract claims were proper. Therefore, we need not address those judgments.
The contract count of Badners and Tindal's complaint reads as follows: "The Defendants, Prudential and the First Alabama Bank, breached the terms of their contractual agreement with the Plaintiffs by failing to pay the June 1986 monthly premium and applying it to payment on the life insurance policy." Badners and Tindal argue that because Prudential changed its *Page 1245 
method of billing and First Alabama did not pay the premium even though it had paid the draft for the premium for 27 months after Thomas Badners's account number 21-076-50 was closed and because no notice of default was given until well beyond the 31-day grace period, there is enough evidence to submit to a jury the question of whether there was a breach of contract by Prudential as to the agreement to pay the premiums automatically. We agree. The trial court erred in entering summary judgment for Prudential on the breach of contract claim. Accordingly, we affirm the summary judgment for Grant on the breach of contract claims and reverse the summary judgment for Prudential on the breach of contract claims.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, ADAMS and KENNEDY, JJ., concur.
[1] South Baldwin Bank was the predecessor of First Alabama Bank of South Baldwin. Hereinafter, we will refer to this bank as "First Alabama."
[2] Carole J. Badners remarried and her name changed to Carole B. Tindal.